UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
*MIAMI DIVISION*

In re:                                                                                          Case No.: **18-24170-AJC**

ASTOR EB-5, LLC,                                                                 Chapter **11**

      Debtor and Debtor-In-Possession.
_____\

**SHAREHOLDER'S OBJECTION TO LANDLORD 1651 ASTOR, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND/OR MOTION FOR EXTENSION OF TIME TO MAKE ADEQUATE PROTECTION PAYMENTS DUE TO MISMANAGEMENT OF DEBTOR IN POSSESSION BY DAVID HART**

**COMES NOW**, Shareholders[1], FABIOLA RENZA de VALENZUELA (hereinafter "Shareholder RENZA"), ZORAIDA M. YANEZ (hereinafter "Shareholder YANEZ"), IRAK MANUEL FERREIRA MARINO (hereinafter "Shareholder IRAK"), ISRAEL FERREIRA (hereinafter Shareholder "ISRAEL"), and GELA KOVALSKY (hereinafter Shareholder "KOVALSKY") (hereafter collectively known as "Shareholders" or "EB-5 Investors") by and through undersigned counsel, respectfully file this Objection to Landlord 1651 Astor LLC's Motion for Relief From Stay and/or Motion for Extension of Time to Make Adequate Protection Payments Due to the Mismanagement of the Debtor In Possession by Managing Member David Hart pursuant to 11 U.S.C. §1109(b) and for good cause states as follows:

---

[1] The Shareholders are investors in the debtor that contributed the capital of the company as part of their application for investor U.S. resident visas pursuant to the EB-5 program. They are also creditors of the debtor through advances made to fund certain expenses of the debtor, pre and post-petition.

**BACKGROUND**

1. On November 13, 2018, Astor EB-5, LLC. ("Debtor" or "ASTOR") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 *et seq*. (the bankruptcy Code").

2. On December 7, 2018, the purported Landlord, 1651 ASTOR, LLC (the "Landlord"), filed its Motion for Relief From the Automatic Stay (the "MOTION"). [DE 27]

3. The Ground Lease that is the subject of the Landlord's Motion is the 99-year lease on the Fee title to the land under the Astor Hotel. The Debtor owns the building and improvements and operates the Astor Hotel from the premises.

4. The Debtor's business is the operation of the Astor Hotel.

5. The Leasehold interest is practically the only asset of the Debtor and is valued at over $10,800,000. (See attached Exhibit "A" Broker's Opinion of Value dated January 15, 2019).

6. There are no loan creditors other than a disputed leasehold mortgage issued without contemporaneous consideration by the Debtor' Managing Member, DAVID HART (hereinafter "HART"), to a company owned and managed by him, ASTOR EB-5 FUNDING LLC.

7. The remaining debt/claims are less than $1,000,000 and include another disputed $321,000 claim purportedly due to Managing Member Hart which is unsupported.

8. There is between $5,000,000 and $9,000,000 in equity in the Leasehold interest depending on the outcome of the disputed debt of HART and his company.

9. Shortly before the filing of the petition in this case Debtor received an offer of $10,000,000 to purchase the Debtor's leasehold interest. (See Exhibit "B" copy of offer).

10. The offers were rejected by a vote of the shareholders because they learned that HART the organizer, promoter and Managing Member of the Debtor, contrary to the interest of the company and for his personal benefit, issued to a company he owns and manages, Astor EB-5 Funding LLC., a mortgage in the amount of $4,500,000.00 on the previously unencumbered property of the Debtor. (See Exhibit "C" copy of Mortgage). This mortgage was entered into without the requisite approvals necessary under the Operating Agreement that provides that he cannot mortgage the property or refinance any indebtedness without approval of the members. More importantly there was no consideration for the mortgage, and it was issued when Hart knew that the company was insolvent. (See Exhibit "D" email dated 9-5-2017 (days after the mortgage) from Hart stating the company was unable to pay the rent on the land lease).

11. Additionally, the shareholders learned that HART had committed many other financial improprieties and self-dealing including the fraudulent issuance to himself of additional shares of the company without contributing any capital; and improperly paying himself over $1,000,000 dollars from the company.

12. Through the filing of this Response, HART as manager of the Debtor in possession has not filed a Response to the Landlord's Motion and negligently failed to take any steps to protect the asset of the debtor.

13. Furthermore, HART has undervalued the Leasehold interest at only $2,500,000 on the filed schedules (See DE 32 page 2).

14. It is the Shareholders belief that HART plans to use his position as manager of the Debtor in Possession to undervalue the Leasehold interest and favor himself in the disposition of the asset to himself or his associates.

15. Prior to the filing of this voluntary petition the shareholders, on their behalf and as a derivative action on behalf of the debtor, filed suit in the Circuit Court of Miami-Dade County and an arbitration action against HART and others for fraud, mismanagement and self-dealing.

16. Upon the filing of the eviction complaint in the Circuit Court of Miami-Dade County and an arbitration action, the shareholders sought the ouster of HART as managing member for failing to protect the Leasehold interest and filed an action to appoint a receiver to take over the operations of the company.

17. HART has continued his reckless disregard for the interest of the shareholders and creditors of the estate by failing to file a plan of reorganization and undervaluing the leasehold interest.

18. The shareholders have an interest in the Leasehold interest and the viability of the Debtor and have obtained conditional approval of $6,000,000 to fund a plan of reorganization without HART as manager. (See Exhibit "E" Letter from Spectrum Group Management).

## **ARGUMENT**

19. The crux of the Landlord's motion for relief from the automatic stay is based on the inaccurate allegation that the Ground Lease was terminated based on an alleged Notice which was purportedly sent to the Debtor[2].

20. There is no provision in the Ground Lease that allows for a unilateral termination of the Lease as argued in the Motion.

21. However, the Ground Lease does provide for the termination of the lease only

---

[2] The Motion cites to several cases regarding the remedies of a landlord when there is an actual termination of the lease. All of the cases cited by the Landlord are distinguishable to the facts of this case and the language of the subject Ground Lease.

with a "judicial order". The Landlord may "[o]btain a judicial order terminating the Ground Lease following an additional written notice of Landlord's intent to so terminate". (See Exhibit "F" [DE 28 p 107] §14.2.1).

22. No judicial order of termination has been obtained nor has Landlord cited to having obtained such order nor any other authority within the Lease that allows for the unilateral termination of the Ground Lease.

23. Landlord correctly notes in the Motion that the Debtor disputed the allegations that there was a default and/or money due under the Lease. In fact, as pointed out in the Landlord's Motion, the Debtor filed a motion in the Circuit Court action to determine the amount of rent if any is due to the Landlord.

24. Additionally, relief from the automatic stay pursuant to section 362(d)(1) requires a showing of "cause." 11 U.S.C. § 362(d)(1). Because the Bankruptcy Code does not define "cause," courts must make that determination on a case-by-case basis. *In re Robinson*, 169 B.R. 356, 359 (E.D. Va. 1994). In making this determination, courts look at the totality of the circumstances, *In re George*, 315 B.R. 624 (Bankr. S.D. Ga. 2004). In adjudicating motions brought under section 362(d)(1), courts balance the potential hardship the movant will suffer if the stay is not lifted against the potential prejudice to the debtor, the estate or other creditors of the stay is lifted. *Robinson*, 169 B.R. at 359.

25. Alternatively, a creditor may obtain stay relief against property of the Debtor where (A) the debtor does not have equity in the property; and (B) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

26. Under either of the criteria, the aforementioned facts and equities favor against the removal of the automatic stay. The Lease is the primary asset of the debtor that is necessary

for the reorganization and protection of the other creditors and interested parties, it is valued at over $10,000,000 is unencumbered (other than a fraudulent voidable mortgage issued by HART to his own company) and has millions of dollars in equity. The Landlord has ample adequate protection by the sheer value and equity in the Leasehold interest, $10,000,000. to cover a $241,905.00 claim.

27. It is likely and reasonable to infer that the only reason a plan for reorganization has not been filed is because of the conflict of interest of ethically challenged managing member HART.

28. The shareholders are interested in exploring the reorganization of the Debtor to allow for the operation of the Hotel and/or the orderly sale of the Leasehold interest in a way to maximize the value of the asset.

29. The Lease was not terminated prior to the filing of this petition and is a valuable and necessary asset of the estate. As such, the Motion for relief from the Automatic Stay should be denied by the Honorable Court.

30. The Landlord has adequate protection due to the $10,000,000 value of the leasehold interest.

31. The Shareholders request a 30 extension of time to commence post-petition Lease payments so they can address the removal of HART as manager with this Court.

## **CONCLUSION**

WHEREFORE Shareholders respectfully request that this Honorable Court deny the Landlord's motion for relief from stay and in the alternative enter an order providing the Debtor a 30 day extension prior to the commencement of post-petition Lease payments in order to file a

motion or otherwise address the issues of the conflict of interest of managing member Hart and the plan of reorganization of the Debtor.

Dated: January 15, 2019 　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　**CORONA LAW FIRM, P.A.**
　　　　　　　　　　　　　　　　　　3899 NW 7th Street, 2nd Floor
　　　　　　　　　　　　　　　　　　Miami, FL  33126
　　　　　　　　　　　　　　　　　　Telephone: (305) 547-1234
　　　　　　　　　　　　　　　　　　Facsimile: (305)266-1151

　　　　　　　　　　　　　　　　　　By: /s/ Ricardo R. Corona
　　　　　　　　　　　　　　　　　　Ricardo R. Corona, Esq./FBN 111333

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically served through the Court's CM/ECF system upon all parties registered to receive electronic notice in this case as reflected on the attached Electronic Mail Notice List, which includes Paul L. Orshan, Esq., Orshan, P.A., attorneys for the Debtor, 701 Brickell Ave., Suite 2000, Miami, FL 33131, and Brian G Rich, Berger Singerman LLP, attorneys for 1651 Astor LLC, 1450 Brickell Ave, Suite 1900, Miami, FL 33131,on this 15th day of January, 2019.

　　　　　　　　　　　　　　　　　　By: /s/ Ricardo R. Corona
　　　　　　　　　　　　　　　　　　Ricardo R. Corona, Esq

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive email notice/service for this case.

- Ricardo Corona bk@coronapa.com, rcorona@coronapa.com

- Office of the US Trustee USTRPegion21.MM.ECF@usdoj.gov

- Paul L. Orshan Paul@orshanpa.com, seelenams@gmail.com

- Brian G rich brich@bergersingerman.com, efile@bergersingerman.com, bwalter@bergersingerman, efile@ecf.inforuptcy.com

- Steven R Safra steven.safra@csklegal.com, david.caballero@csklegal.com, shelly.zambo@csklegal.com, renee.nail@csklegal.com, hazel.colon@csklegal.com