UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

ASTOR EB-5, LLC                                     Case No.1:18-BK-24170-AJC
                                                    Chapter 11
    Debtor.
_____/

## LANDLORD 1651 ASTOR LLC'S MEMORANDUM

1651 Astor LLC ("Landlord"), by and through its undersigned counsel, hereby files this memorandum to assist the Court as directed at the status conference held on July 3, 2019 and pursuant to the Order on Status Conference [ECF No. 120]. Landlord would respectfully set forth as follows:

### Procedural History

1. Debtor filed this Chapter 11 Case on November 14, 2018. Debtor's Case Management Summary reflects that it owns the building and contents located at 956 Washington Avenue, Miami Beach, Florida ("Premises"), which was operating as the Hotel Astor (the "Hotel"). The Case Management Summary reflects that the Hotel was operating until September 2018. The Hotel has not been operating since that time.

2. The land on which the Hotel is situated is owned by Landlord and is the subject of a ground lease with Debtor (the "Lease" or the "Ground Lease," which will be more fully described below).

3. Prior to the filing of the Chapter 11 case, on October 1, 2018, Landlord filed its *Complaint for Summary Eviction and Damages* (the "Complaint") against Debtor in Miami-Dade

9239913-4

Circuit Court (the "State Court"), No. 2018-033208-CA-01 (the "State Court Action"). The State Court Action was stayed as a result of the filing of the Chapter 11 case.

4. On December 7, 2018, Landlord filed its Motion for Stay Relief [ECF No. 28], seeking relief to continue with the State Court Action. On January 22, 2019, the Court entered the Order Granting Stay Relief to the Landlord [ECF No. 41] (the "Stay Relief Order"). The Stay Relief Order authorized Landlord to continue the State Court Action, "up to and including entry of Judgment, however Landlord shall not execute upon any judgment absent further order of this Court." Thus, Landlord obtained limited stay relief and was permitted to go back to State Court to continue the case. Debtor has been active in its defense in the State Court Action and in posting funds as required in the State Court Action. Debtor posted $413,973.68 on June 7, 2019 and an additional $38,523.55 on June 28, 2019 and August 1, 2019[1] in accordance with the Agreed Order on Defendant's Motion for Rent Determination, dated April 17, 2019 (Doc. 40, in the state Court Action).

5. Since the entry of the Stay Relief Order, Debtor has continued in Chapter 11, but continues to have no ongoing operations (i.e. the hotel is not operating). Debtor has sought and obtained an extension to exclusivity [ECF No. 70] through June 12, 2019, which time has now passed. Debtor had a settlement approved [ECF No. 84], which removed David Hart as the Manager of Debtor.

6. Purported Creditor, Astor EB-5 Funding, LLC, ("Alleged Lender") filed its Expedited Motion to Compel *Debtor to Surrender Leased Premises Pursuant to 11 U.S.C. 365(D)(4) of the Bankruptcy Code* ECF No. 97]. That Motion was denied, without prejudice on

---

[1] Pursuant to the terms of the Lease and the Doc. 40, in the state Court Action, beginning on August 1, 2019 Debtor was required to fund $39,486.64 into the State Court registry. This issue will be addressed in the State Court proceedings.

9239913-4

May 13, 2019 [ECF No. 99]. Alleged Lender asserts that it is a secured creditor with a leasehold mortgage. Debtor alleges that the secured debt is not truly debt.

7.  Debtor has changed counsel and has obtained authorization to have counsel retained as bankruptcy counsel [ECF No. 101] and counsel for the State Court Action [ECF No. 102].

8.  With no ongoing operations and the removal of the prior Manager, it is unclear (at least to Landlord) as to who is directing the actions of Debtor.

9.  On July 2, 2019, Debtor filed an Adversary Complaint against the Alleged Lender (the "Adversary Complaint").

## Issues Presented[2]

**A.  The Landlord is Owed Significant Sums.**

The Landlord is owed significant sums as a result of Debtor's breach of the Lease by failing to pay its rent obligations. As previously mentioned, Debtor has since posted $413,973.68 on June 7, 2019 and an additional $38,523.55 on June 28, 2019 in the State Court Registry to cure the rent defaults in the Lease. In addition to the rent money that Debtor has posted in State Court registry, Landlord, pursuant to the Lease, is entitled to taxes and fees associated with rent and Landlord's representation in these proceedings. Additionally, each month Debtor has a continuing obligation to post $38,523.55 prior to the first of each subsequent month for Rent. Further, the Minimum Annual Rent, as defined in the Lease, increases 2.5% effective on August 1, 2019; Debtor will then need to post $39,486.64 with the State Court Registry thereafter. Landlord suggests that any further rent payments, and the prior payments, should be paid directly to Landlord, as it is clear Debtor intends to continue its occupancy of the Premises and assume the Lease.

---

[2] These issues are issues that have either been raised in the various Court hearings in this case or discussed as between the Parties. There are presently no Motions or Pleadings before the Court that have requested specific relief from the Court. Landlord reserves all rights claims and defenses and provides this Memorandum to assist the Court in its analysis as requested at the Status Conference held on July 3, 2019.

## B. Has the Lease Been Assumed or Rejected?

10. While not directly before the Court in any pending pleading, Alleged Lender takes the position, that Debtor's failure to affirmatively assume the Lease should be deemed a rejection and thus a termination of the Lease. Debtor has taken the position that its actions (specifically posting $452,497.23 in the registry of the State Court) indicate its intention to assume the Lease. However, Debtor has not yet filed a Plan of Reorganization or a Motion seeking the assumption of the Lease.

11. *Section 365(D)(4)(A)* of the Bankruptcy Code provides

"... an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of--

**(i)** the date that is 120 days after the date of the order for relief; or
**(ii)** the date of the entry of an order confirming a plan. . . "

11 U.S.C. Section 365(D)(4)(A),

It is not disputed that Debtor filed this case on November 18, 2018 and that Debtor did not file a Motion seeking to assume the Lease within the 120 days.

12. The time limits imposed by § 365(d) tend to be strictly applied. Debtors that intend to retain a commercial location should typically make the assumption of the lease a priority issue. 42 No. 9 *The Lawyer's Brief* NL 2. In the event a debtor fails to timely assume a lease, the lease is normally deemed rejected and the debtor shall immediately surrender the leased premises to the landlord. *In re Tubular Techs., LLC*, 362 B.R. 243, 247 (Bankr. D.S.C. 2006) (citations omitted, noting that a lease is rejected if not timely assumed and the clear and unambiguous language of § 365(d)(4) requires the debtor to surrender the property to the landlord).

13. However, a few courts have held that a debtor can assume or reject a lease without filing a formal motion by communicating its intent to the lessor in an unequivocal manner. *In re*

9239913-4

*Sportsman's Link, Inc.,* No. 07-10454, 2007 WL 7023835, at *2 (Bankr. S.D. Ga. Oct. 31, 2007) (citing to *In re 1 Potato 2, Inc.,* 58 B.R. 752, 755 (Bankr.D.Minn.1986) (holding that a debtor in possession may assume or reject an unexpired lease by clearly communicating in an unequivocal manner its intentions to do so to the lessor, the debtor "must manifest an unconditional and unambiguous decision").

14. In this case, Debtor did not file a Motion to Assume within the 120-day time period. However, Debtor has taken steps to demonstrate its desire and intention to assume the Lease. Landlord wants to get paid the past due rents that it is owed. Landlord was granted stay relief, but the Stay Relief order required to Landlord to obtain further order of this Court prior to actually taking possession of the premises. In the State Court Action, Debtor has posted in excess of $450,000 in the registry of the Court and in this Court has verbally advised the Court of its intention to assume the Lease. Accordingly, Landlord, while reserving all of its rights regarding whether or not the Lease has been rejected, submits that the issue remains open, pending further discussions between the parties and, if necessary, a ruling from this Court on whether or not the Lease is deemed rejected.

    **C.**    **If the Lease is Deemed Rejected, Has the Lease Been Terminated.**

15. The Alleged Lender contends that if the Lease is deemed rejected that a termination of the Lease has occurred and that certain springing rights in favor of the Alleged Lender exist. Before determining if, the Alleged Lender has any rights in the Lease, the issue of lease termination would need to be determined (if the Lease has been deemed rejected, which has not been determined).

16. In the 11th Circuit, and other circuits around the country, there appears to be a split of authority as to whether the rejection of an executory contract is deemed to be either a breach or termination of the contract.[3]

17. In *Thompkins v. Lil' Joe Records, Inc.* the court cites to Section § 365(g) which provides:

> Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease-
> *Thompkins v. Lil' Joe Records, Inc.,* 476 F.3d 1294 (11th Cir. 2007) (citing 11 U.S.C. § 365(g))

18. The court in *Lil Joe Records, Inc.*, expanded on its analysis and stated rejection "does not embody the contract-vaporizing properties so commonly ascribed to it .... Rejection merely frees the estate from the obligation to perform; it does not make the contract disappear." *Id*. citing *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. at 703. More specifically, "[r]ejection has absolutely no effect upon the contract's continued existence; the contract is not cancelled, repudiated, rescinded, or in any other fashion terminated." *Id.* at 703 (quotations omitted); *see also Eastover Bank for Savings v. Sowashee Venture (In re Austin Dev. Co.),* 19 F.3d 1077, 1082 (5th Cir.1994) (holding that rejection under § 365(g) "does not mean that the executory contract ... has been terminated, but only that a breach has been deemed to occur");

---

[3] With respect to non-residential real estate, however, a majority of courts have concluded that the express requirement for surrender upon failure to assume within the statutory period necessarily implies a termination of the leasehold estate. See *Sea Harvest Corp. v. Riviera Land Co*., 868 F.2d 1077 (9th Cir.1989); *In re Henderson*, 245 B.R. 449 (Bankr.S.D.N.Y.2000); *In re Locke*, 180 B.R. 245 (Bankr.C.D.Cal.1995); *In re 6177 Realty Assoc., Inc*., 142 B.R. 1017 (Bankr.S.D.Fla.1992); *Chatlos Sys. Inc. v. Kaplan*, 147 B.R. 96 (D.Del.1992), aff'd, 998 F.2d 1005 (3rd Cir.1993); *In re Giles Assoc., Ltd*., 92 B.R. 695 (Bankr.W.D.Tex.1988); *In re Gillis*, 92 B.R. 461 (Bankr.D.Hawai'i 1988); *In re Bernard*, 69 B.R. 13 (Bankr.D.Hawai'i 1986); *In re Southwest Aircraft Services, Inc*., 53 B.R. 805 (Bankr.C.D.Cal.1985), rev'd on other grounds, 831 F.2d 848 (9th Cir.1987), cert. denied, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988); In re Hawaii Dimensions, Inc., 39 B.R. 606 (Bankr.D.Hawai'i 1984), aff'd, 47 B.R. 425 (D.Haw.1985). **Other courts have disagreed**. See *Matter of Austin Development Co*., 19 F.3d 1077 (5th Cir.1994), cert. denied, 513 U.S. 874, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994); *In re Blackburn*, 88 B.R. 273 (Bankr.S.D.Cal.1988); *In re Picnic 'N Chicken, Inc*., 58 B.R. 523 (Bankr.S.D.Cal.1986); *In re Storage Technology Corp*., 53 B.R. 471 (Bankr.D.Colo.1985).

19. It is important to note that *Lil Joe Records, Inc*. did **not** deal with non-residential property and was not subject to the language set forth in Section 365(d)(4) as the property in controversy here would be.

20. However, In *In re 6177 Realty Assocs., Inc.,* Judge Mark held that the specific language provided for in § 365(d)(4) renders rejection of a non-residential real property lease different from other executory contracts in which rejection may not equal termination. *In re 6177 Realty Assocs., Inc.,* 142 B.R. 1017, 1019 (Bankr. S.D. Fla. 1992)[4]. That court, citing to Judge Russell in the *Southwest Aircraft* case, stated "by requiring that upon rejection under § 365(d)(4), 'the Trustee shall immediately surrender such non-residential real property to the lessor,' it is clear Congress intended that rejecting a lease terminates the lease." *In re Southwest Aircraft Services, Inc.,* 53 B.R. 805 (Bankr.C.D.Cal.1985). Judge Mark went further to find "Once the underlying lease is terminated, leasehold mortgagees or sublessees retain no interest that can be pursued in bankruptcy court or state court. *Id.* at 1019. Deeming the rejection to be termination is consistent with the public policy embodied in § 365(d)(4) and does not prejudice the rights of leasehold mortgagees or sublessees. *Id.* Depending upon the terms of their mortgage or sublease, these parties may have standing to seek assumption of the underlying lease to protect their rights. But they must act within the statutorily prescribed sixty (60) days. *Id.* Rather, having concluded that the underlying lease is terminated, "the landlord is entitled to immediate surrender of the premises not only by the Papos (subtenant) but also by 6177 Realty (tenant) and any other parties who claim an interest in the premises". *In re 6177 Realty Assocs., Inc.,* 142 B.R. at 1019*; See also In re Elm Inn, Inc.,* 942 F.2d 630 (9th Cir.1991) (holding that it is appropriate for the bankruptcy court to

---

[4] This Court agreed that rejection does not always equal termination of executory contracts. However, Judge Mark nevertheless agreed with the majority of cases which hold that rejection does equal termination of non-residential real property leases in which the debtor or Trustee is the lessee. *In re 6177 Realty Assocs., Inc.*, 142 B.R. 1017, 1019 (Bankr. S.D. Fla. 1992).

enter an order compelling surrender of the premises once a lease has been rejected under § 365(d)(4)). The primary reason for reaching this result is the specific statutory language in § 365(d)(4). *Id.*

21.     In *In re Driscoll,* Judge Olson reviewed the reasoning behind *6177 Realty Assocs., Inc.*, and said it "technically remains good law, [however] the theoretical underpinning of the decision has essentially been stripped, citing to a Judge Jennemann case, *In re Florida Lifestyle Apparel,* 221 B.R. 897, 898 (Bankr. M.D. Fla. 1997) and a more recent Judge Mark case, *In re CHS Electronics, Inc.,* 265 B.R. 339, 342 (Bankr. S.D. Fla. 2001). These cases are inapplicable and do not focus any of its analysis on § 365(D)(4) and instead examined § 365(D)(3) as to whether a landlord is entitled to administrative priority expense for post-petition obligations under the lease when the leased premises had been surrendered prepetition. These courts held: until a Chapter 11 debtor-lessee rejected its unexpired lease, lessor was automatically entitled to administrative expense claim for rent accruing post-petition, without necessity of showing any benefit to estate.

22.     However, other circuits have rejected the line of reasoning identified in *6177 Realty Assoc's*, and have concluded that a debtor's inaction in timely deciding to assume or reject a lease of nonresidential real property under § 365(d)(4), leads to a deemed rejection, and does not effect a termination of that lease, or, consequently, an implied forfeiture of the rights of third parties to the lease. *Matter of Austin Dev. Co.*, 19 F.3d 1077, 1083 (5th Cir. 1994). These courts assert that this is a capricious result that makes no bankruptcy sense- that the most adverse consequences of 365(d)(4) would fall on the third-party mortgagee whose rights have been held forfeited by operation of law without the procedural protections of an adversary proceeding. *Id.*

23. Thus, the issue of whether the Lease is terminated or whether Debtor has breached the Lease appears to remain a contested issue. Accordingly, any potential rights that the Alleged Lender may have upon a termination of the Lease remain to be determined.

**D.  Even if the Lease Has Been Rejected and Deemed Terminated, the Alleged Lender's Rights are Not Clear.**

24. Alleged Lender further argues that upon the termination of the Lease, it (the Alleged Lender) essentially has the right to step into the Lease as the Lessee or that Landlord has the obligation to negotiate a new lease with them.

25. Again, while this issue is not before the Court, this argument has many weaknesses.

**Alleged Lender is Not an Institutional Lender**

26. If the Alleged Lender is deemed to be a true secured creditor and a leasehold mortgagee (which is subject to dispute and the subject of the Adversary Complaint), the Lease purports to provide leasehold mortgagees certain benefits so long as said leasehold mortgagee is an Institutional Lender (as such term is used and defined in the Lease) and such Institutional Lender provides Landlord "a true copy thereof, together with written notice specifying the name and address of such leasehold mortgages and the pertinent recording data with respect to such Leasehold Mortgages".

27. However, Alleged Lender clearly is not an Institutional Lender.[5] Alleged Lender's members are simply comprised of EB-5 investors who are in the same position as the EB-5 investors who comprise the members of Debtor. If Alleged Lender cannot satisfy this condition precedent, then all of their subsequent arguments in this regard fail.

---

[5] Article 1 of the Lease defines an Institutional Lender as "A savings bank; federal saving and loan association; national bank; trust company; life insurance company or other insurance company; a cooperative bank; profit or retirement fund; governmental agency; educational institution; or other financial or lending institution who loans on real estate are regulated by federal or state law which may include an investment bank or REIT; or other entity of that type that is general recognized within industry standards as an institutional lender.

28. Assuming that Alleged Lender can somehow prove that it is an Institutional Lender, Alleged Lender failed to comply with Section 11.2(d) of the Lease, which would preclude them from exercising any purported rights under the Lease. This Section of the Lease provides a leasehold mortgagee, that satisfies the above condition precedent, with the right to enter into a new lease with Landlord, in the event the Lease is terminated or in default, so long as the leasehold mortgage provides a written request for a new lease and payment to Landlord of all amounts then due to Landlord but for the termination within twenty-five (25) days of a notice of the termination. The Alleged Lender did not provide Landlord with any notice of its Leasehold Mortgage and therefore is not entitled to any benefits conferred to leasehold mortgagees under the Lease.

29. Notwithstanding that Alleged Lender is not an Institutional Lender, and that Alleged Lender failed to provide the required notice under the Lease[6], Landlord, after discovery of the Alleged Lender's Mortgage by searching the public records for encumbrances on the Premises in preparation of filing the eviction action in State Court, provided its first Notice of Termination of the Lease to Lender on October 1, 2018. Alleged Lender did not attempt to exercise any right under the Lease by making a written request for a new lease nor took any action to cure Debtor's default within the 25-day period or after. Therefore, any right Alleged Lender may have believed it had under Lease has lapsed.

30. The Alleged Lender has positioned that the original Notice of Termination was insufficient as Landlord's notice was sent to the attention of David J. Hart. Alleged Lender argues that Mr. Hart, at the time of Notice of Termination, was no longer affiliated with Alleged Lender and, therefore, the Notice of Termination was not sufficient. Although Landlord was not obligated to notify the Alleged Lender of the termination, Landlord points out that the Mortgage, provides

---

[6] Query whether Alleged Lender failed to provide notice to Landlord of the existence of the mortgage since Alleged Lender cannot comply with the condition precedent to achieve the lender safe harbor afforded to Institutional Lenders.

9239913-4

that ". . . notice to either party shall be sent to the respective address set forth on the first page of this Mortgage". Mr. Hart is identified as the appropriate notice party in the Mortgage. Additionally, the Secretary of State Division of Corporation's database ("Sunbiz") indicated that Mr. Hart was the registered agent of Alleged Lender at that time.

31.  Further, to the extent the Court determines, that pursuant to Section § 365(D)(4), Debtor's failure to assume the Lease within the time frame provided resulted in the automatic rejection of the Lease, Alleged Lender was well aware and participated in the bankruptcy case, yet again took no action and failed to provide any notice of its election to enter into a new lease with Landlord nor took any action to cure the default. While Landlord would dispute that the Alleged Lender had an additional twenty-five (25) days to cure the termination from the date of rejection by Debtor, that date has also since expired.

32.  As such, to the extent Debtor's interest in the Lease has been terminated, the Alleged Lender's rights under the Lease, if any, have also been lost. Even if Alleged Lender can overcome the hurdle of not being an Institutional Lender, Alleged Lender's rights are time-barred as they did not (i) respond to Landlord's original Notice of Termination; (ii) post any funds to cure Debtor's default of the lease; nor (iii) file a Motion within the statutorily prescribed one-hundred and twenty (120) days under § 365(D)(4).[7]

33.  Subsequently, taking a belts and suspenders approach due to Alleged Lender's insistence that Alleged Lender retained rights under the Lease, Landlord sent a second Notice of Termination dated April 22, 2019 (Exhibit "B", "Second Notice of Termination"), to the extent Alleged Lender still asserted it maintained election rights under the Lease. The Second Notice of

---

[7] Section § 365(d)(4) was revised subsequent to the ruling in *In re 6177 Realty Associates, Inc.,* 142 B.R. 1017 extending the deadline for the Trustee (or debtor-in-possession) to assume or reject an unexpired lease to one-hundred and twenty (120) days instead of sixty (60) days.

9239913-4

Termination was provided because Landlord viewed Alleged Lender's actions as interfering with Debtor's rights under the Lease. Landlord alleged that Alleged Lender did not have any right to make an election under Section 11.2 of the Lease and further reserved Landlord's right to contest any right asserted by Alleged Lender but gave a non-contestable termination date. Even so, the Alleged Lender has not made such election and further has not provided any evidence of Alleged Lender's ability to perform, i.e., that it is able to pay all sums due under the Lease, including attorney's fees. If Alleged Lender truly wanted to exercise its rights it should, as they say, –"show us the money". The Alleged Lender has taken no action, other than efforts to disrupt the Bankruptcy Case, to try to show its good faith or efforts to enter into a new lease. Instead, Debtor has posted in excess of $450,000 to demonstrate its efforts to comply with the Lease and the outstanding arrearages.

**Landlord has rights to the Premises (the Hotel) Upon Eviction/Termination**

34.     As described herein, Landlord has a ground lease with Debtor. The Hotel is located on the Premises that is the subject of the Lease. Alleged Lender asserts an interest in the actual physical premises and the income that may flow from the property.

35.     Again, while this issue is not before the Court in any pending motion, it is an issue that has been raised between the parties. While reserving all rights, Landlord would assert numerous arguments in this regard.

36.     A leasehold mortgage such as the one asserted by the Alleged Lender is an encumbrance on a tenant's interest in a lease conveyed to a lender as collateral for a loan to the tenant. The obligations of a tenant to a leasehold mortgagee are governed by the leasehold mortgage and related loan documents, and likewise the obligations between a tenant and a landlord are governed by the Ground Lease. The relationship between the three parties, landlord, tenant,

9239913-4

and a leasehold mortgagee are generally governed by a ground lease or a separate consent and subordination, non-disturbance and attornment agreement ("SNDA").

37. A lease made prior to the execution of a mortgage is superior in priority to the mortgage, unless the lease has been subordinated. *See* § 9-2. Priorities between leases and the mortgage, Fla. Mortgages § 9-2; and see also *Glendale Fed. Bank v. Hadden*, 73 Cal. App. 4th 1150, 1153, 87 Cal. Rptr. 2d 102, 104 (1999) (By accepting a leasehold as collateral, a lender takes subject to all the terms of the lease.)

38. To protect itself against termination of the leasehold interest a lender must obtain a contractual right to receive notice of the tenant's defaults and to cure those defaults. *Glendale Fed. Bank v. Hadden*, 73 Cal. App. 4th at 1153-54 *citing* to See 1, Ruda, Asset–Based Financing: A Transactional Guide, *supra,* § 8.03[4][a], at p. 8–25.). A lender can protect itself from the termination of a lease as a result of a default either by reaching a separate agreement, such as an SNDA with the landlord which permits it to cure any defaults or by obtaining an amendment to the lease which so provides. *Id.* Here, the Alleged Lender failed to secure an SNDA and pursuant to the leasehold mortgage provisions, as stated in the Lease, does not qualify for any protection as a Leasehold Mortgagee.[8] Further, Debtor is currently disputing the validity of the Mortgage.

39. Although, in California, the Court in *Glendale* held that the mortgagee's interest was coexistent with the leasehold interest; termination of the lease terminated the mortgage interest. *Glendale Fed. Bank v. Hadden*, 73 Cal. App. 4th at 1153-54 *citing Bowen v. Selby*, 106

---

[8] The Lease provided that any leasehold mortgagee must be an "Institutional Lender", which is defined in the Ground Lease as follows:

> Institutional Lender: A savings bank; federal savings and loan association; national bank; trust company; life insurance company or other insurance company; a cooperative bank; profit or retirement fund; government agency; educational institution; or other financial or lending institution whose loans on real estate are regulated by federal or state law which may include an investment bank or REIT; or other entity of the type that is generally recognized within industry standards as an institutional lender. Article 1 of the

Neb. 166, 183 N.W. 93, 94 (1921); see also *Sw. Vill. Water Co. v. Fleming*, 442 So. 2d 89, 91 (Ala. 1983) ("since [Lender's] rights *were derived* from the rights held by [Tenant], [Lender] could stand in no higher position than [Tenant]. Therefore, any rights that [Lender] may have in the leasehold property were, by necessity, also extinguished"). In reaching this conclusion, the *Bowen* court reasoned that a mortgagee who acquires a leasehold interest takes the mortgage with notice of all the covenants and pursuant to all the provisions in the lease. See *Bowen v. Selby*, 106 Neb. 166, 183 N.W. 93, (1921) "It was [the mortgagees'] duty to ... to see that those covenants were complied with and that the lease [was] saved from forfeiture." *Id.* at 94.). Having failed to ensure that the provisions of the lease were followed, the repossession of the property by defendants under the provisions of the lease terminated the plaintiffs' mortgage interest. *Id.* at pp. 94–95; See also *Banco Panamericano, Inc. v. City of Peoria*, 880 F.3d 329 (7th Cir. 2018) (holding that even a DIP lender with a super-priority claim secured by a "blanket lien" on all of the debtor lessee's assets did not have a "better claim" to property which automatically reverted to the lessor upon termination of a lease.)

40.     As such, to permit the Alleged Lender to assume the position of the lessee and cure the default in the Lease, the court would be giving rights to the Alleged Lender that were not afforded under the Lease. The court should not force Landlord to adhere to a contract not of their own making. See generally, *Sw. Vill. Water Co. v. Fleming*, 442 So. 2d 89, 91 (Ala. 1983).

**Alleged Lender must follow Provisions set forth in Lease Agreement**

41.     The terms and provisions of the Lease as it relates to subsequent Leasehold Mortgages is set forth in Section 11.2 of the Lease and provides as follows:

> **11.2    Leasehold Mortgages.** Tenant and every successor and assign . . . is hereby given the right by Landlord in addition to any other rights herein granted, **without Landlord's prior consent** to mortgage its respective interest in the Ground Lease, or any part or parts thereof, under one or more leasehold mortgages and to assign its interest under this Ground

> Lease or the sublease, or any part or parts thereof, as collateral security for such mortgages **upon the condition that all rights acquired under such mortgages shall be subject to each and all of the covenants, conditions, and restrictions set forth in this Ground Lease to all rights and interests of Landlord herein, none of which covenants, conditions or restrictions is or shall be waived by Landlord by reason of the right given so to mortgage such interest in this Ground Lease** as expressly provided herein (**all such mortgages being herein collectively called "Leasehold Mortgages," each of which shall be an Institutional Lender,** and the holders thereof being herein collectively referred to as "Leasehold Mortgagees")
> . . .
> If any or Tenant or Tenant's successors and assigns or any subtenant of all or substantially all of the Demised Premises shall mortgage this leasehold. . . and if the holders of such Leasehold Mortgages **shall contemporaneously or subsequently send to Landlord a true copy thereof, together with written notice specifying the name and address of such Leasehold Mortgagees and the pertinent recording data with respect to such Leasehold Mortgages**, Landlord agrees that until written notice of satisfaction of such Leasehold Mortgages is given by the holders thereof to Landlord, the following provisions shall apply.

42. Pursuant to these terms in the Lease, Debtor was provided consent to mortgage its respective interest in the Lease, with the explicit understanding that "all rights acquired under such mortgages shall be subject to each and all of the covenants, conditions, and restrictions set forth in this ground lease". Thus, at no point in time could Alleged Lender's mortgage ever become senior to Landlord's Lease.

43. Further, in order to be entitled to certain benefits provided under the Lease, Alleged Lender must have provided Landlord a true copy thereof, together with written notice specifying the name and address of such Leasehold Mortgagees and the pertinent recording data with respect to such Leasehold Mortgages. This notice along with a copy of the Mortgage never provided to Landlord.

44. In *Bank of Pensacola*, the court held that the landlord was not required to provide a lender, who did not comply with the notice provisions of the ground lease, with any benefits, including a notice of default. *Bank of Pensacola v. Am. Nat. Ins. Co.,* No. 3:07CV232/LAC, 2008 WL 817100, at *2 (N.D. Fla. Mar. 24, 2008). The bank argued that even though it did not comply

with the exact provisions of the ground lease, it was still entitled to these benefits and protections because the landlord had implied notice. The bankruptcy court disagreed with this argument and stated: "knowledge that the Bank planned or intended to take a mortgage on the leasehold is not equivalent to actual knowledge that the Bank did in fact take a mortgage on the leasehold. There is no evidence in the record to show that ANICO knew that the mortgage was actually executed."

*Id.*[9]

      45.     The Bankruptcy court continued its argument stating:

> Furthermore, it should be emphasized that the Bank's argument of implied notice really only solves part of the equation as far as the requirement in the ground lease agreement. It is not simply notice of the execution of the mortgage agreement that triggered the need for ANICO to provide notice of default; also required is that the Bank provide ANICO with an actual copy of the mortgage agreement. While ANICO of course should be entitled to a copy of the document without having to explain the purpose for wanting to have the document on hand, it was evident to both the Bankruptcy Court and now to this court that the mortgage document would serve as a catalyst or reminder to ANICO that it should notify the Bank in the event of the default. Although this may amount to a somewhat technical reading of the contract language, the purpose and functionality of this particularized requirement is nonetheless apparent. *Id.*

      46.     Similarly, in this case, not only does the Alleged Lender fail to meet the requirement of being an "Institutional Lender" as defined in the Lease and in fn8 above, there is also no record and no evidence provided by Alleged Lender that it provided notice of its leasehold mortgage nor provided a true copy of the mortgage. Therefore, any benefits bestowed upon an Institutional Lender that provided notice and a copy of the Mortgage, should not be given to Alleged Lender.

---

[9] It's important to note that the Court specifically found that ANICO did not have actual notice of the Bank's mortgage on the leasehold. But see *Manufacturers & Traders Tr. Co. v. Casey Assocs. Ltd. P'ship*, No. NNHCV176074376S, 2019 WL 2518319, at *7 (Conn. Super. Ct. May 13, 2019) which stated: The court's decision in *Bank of Pensacola* is readily distinguishable from this case because in *Bank of Pensacola*, there was no evidence that the landlord had actual notice of the bank's leasehold mortgage

**Landlord's Priority as to the Building, Improvements and Rents**

47. It should be acknowledged that the Alleged Lender's mortgage not only encumbered Debtor's leasehold interest in the Lease but also encumbered Debtor's interest in the Building and Improvements on the Property. Although Alleged Lender may try to assert that it's mortgage on the Building and Improvements is on the Fee, any rights to such property would be second in line to Landlord's claim, as a prior encumbrance. To the extent the Alleged Lender asserts that it has priority as to the building and rents derived therefrom is in disagreement with Florida Law and Landlord's entitlement to a "landlord lien" on Debtor's property.

48. Florida Statute Section 83.08 governs the creation of a landlord's lien for rent due and owing. Section 83.08 states:

> Every person to whom rent may be due, the person's heirs, executors, administrators or assigns, shall have a lien for such rent upon the property found upon or off the premises leased or rented, and in the possession of any person, as follows:
>
> (1) Upon agricultural products raised on the land leased or rented for the current year. This lien shall be superior to all other liens, though of older date.
> (2) Upon all other property of the lessee or his or her sublessee or assigns, usually kept on the premises. This lien shall be superior to any lien acquired subsequent to the bringing of the property on the premises leased.
> (3) Upon all other property of the defendant. This lien shall date from the levy of the distress warrant hereinafter provided. Fla. Stat. § 83.08 (2008).

49. Further, a landlord's statutory lien need not be filed or recorded to be perfected; rather, it attaches at the commencement of tenancy or as soon as the chattel is brought onto the premises and is superior to a subsequently created chattel lien. *Beason–Simmons v. Avion Technologies Inc.* 662 So.2d 1317, 1318 (4th DCA 1995) (*citing Lovett v. Lee,* 141 Fla. 395, 193 So. 538 (Fla.1940)); *see also Geiger Mut. Agency, Inc. v. Wright,* 233 So. 2d 444 (Fla. Dist. Ct. App. 1970)

50. A landlord's lien attaches either at time of commencement of tenancy or when chattel is brought on premises and landlord's lien is superior to subsequently created chattel liens,

9239913-4

and without specific acts of landlord agreeing to subordinate his lien to that of chattel mortgage, he continues to possess a priority of lien over that of chattel mortgagee

51. Thus, a landlord's lien is superior even when the rent default occurs after an intervening lien has been perfected. *In re Miller Eng'g, Inc.*, 398 B.R. 473, 482–83 (Bankr. S.D. Fla. 2008) citing to *Lovett,* 141 Fla. at 405–06, 193 So. 538. However, a "landlord's lien is not superior to a lien acquired by another prior to the bringing of the property upon the leased premises, or prior to the commencement of the tenancy under the lease." *Id. citing to Ruge v. Webb Press Co.,* 71 Fla. 536, 544, 71 So. 627 (1916). However, note that the existence of a landlord's lien is not permanent. As stated by the Florida Third District Court of Appeal: Nowhere in the statute does it indicate that the superiority of a landlord's lien over a subsequent lienholder continues *after* the lease period has ended, the lease's terms and conditions fulfilled, and a new lease is entered. *Id.*

## Conclusion

The issues can be summarized as follows:

1. It remains to be determined if Debtor has or will assume the Lease. However, Debtor has made its intention known to assume the Lease and has placed funds, as required by the State Court, into the registry of the Court. Landlord submits that those funds should be immediately released to Landlord and that future payments should be made directly to Landlord and not through the State Court registry;

2. Debtor disputes the validity of the Alleged Lender's mortgage and secured claim. Until a determination is made as to this issue, Alleged Lender should not be permitted to interfere with Landlord's rights. Alternatively, if the Alleged Lender is prepared to immediately fund to Landlord the amount sufficient to cure all arrearages, this analysis may be different;

3. If the Alleged Lender is determined to have a valid secured claim and leasehold mortgage, Landlord would dispute that Alleged Lender is an Institutional Lender, and that it has any rights as same, under the Lease;

4. Debtor should be required to file a Plan and Disclosure Statement promptly to move this case towards resolution;

5. Perhaps a mediation would be successful in resolving the issues between the parties; and

6. Landlord's rights should be preserved and until such time as all defaults have been cured, it should be entitled to continue to pursue its rights and remedies.

Dated: August 2 , 2019

Respectfully submitted,
BERGER SINGERMAN LLP
*Attorneys for 1651 Astor LLC*
1450 Brickell Ave., Suite 1900
Miami, FL 33131
Tel: (305) 755-9500
Fax: (305) 714-4340

/s/ Brian G. Rich
Brian G. Rich
Florida Bar No. 038229
brich@bergersingerman.com
Barry Lapides
Florida Bar No. 683558
blapides@bergersingerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by the Court's CM/ECF System on all registered users, including Attorneys for the Debtor, on this 2nd day of August, 2019.

/s/ Brian G. Rich
Brian G. Rich

9239913-4