UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
*MIAMI DIVISION*

In re:                                                                                          Case No.: **18-24170-AJC**

ASTOR EB-5, LLC,                                                                  Chapter **11**

    Debtor and Debtor-In-Possession.
_____\

**SHAREHOLDER'S MOTION FOR ENTRY OF AN ORDER DISMISSING
CHAPTER 11 CASE**

**COMES NOW**, Shareholders[1], FABIOLA RENZA de VALENZUELA (hereinafter "Shareholder RENZA"), ZORAIDA M. YANEZ (hereinafter "Shareholder YANEZ"), IRAK MANUEL FERREIRA MARINO (hereinafter "Shareholder IRAK"), ISRAEL FERREIRA (hereinafter Shareholder "ISRAEL"), and GELA KOVALSKY (hereinafter Shareholder "KOVALSKY") (hereafter collectively known as "Shareholders" or "EB-5 Investors") respectfully file this and through their undersigned counsel, hereby file this motion (the "Motion") for entry of order, pursuant to sections §105(a) and §1112 of title 11 of the United States Code, 11 U.S.C.§§ 101-1532 (the "Bankruptcy Code"), dismissing the Chapter 11 Case and granting such other and further relief as requested herein or as the Court (as defined herein) otherwise deems necessary or appropriate. In support of this Motion and in support thereof, state:

**BACKGROUND**

---

[1] The Shareholders are investors in the debtor that contributed the capital of the company as part of their application for investor U.S. resident visas pursuant to the EB-5 program. They are also creditors of the debtor through advances made to fund certain expenses of the debtor, pre and post-petition.

1. On November 13, 2018, Astor EB-5, LLC. ("Debtor" or "ASTOR") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101 *et seq*. (the bankruptcy Code").

2. The Shareholders are a party in interest and have a right to be heard pursuant to 11 U.S.C. §1109(b).

3. The reason for the voluntary filing of the petition was to prevent the forfeiture of the primary asset of the Debtor, the 99 year leasehold interest in The Astor Hotel (the "LEASE").

4. At the time of the filing of the petition the Debtor was in default on the Lease payments and owed over $280,000 in past due payments to 1651 ASTOR, LLC (the "Landlord") and a state court eviction action was pending.

5. On December 7, 2018, the Landlord, filed its Motion for Relief From the Automatic Stay (the "STAY MOTION"). [DE 27]

6. The Debtor at that time controlled by Debtor' Managing Member, DAVID HART (hereinafter "HART").

7. Prior to the filing of this voluntary petition the shareholders, on their behalf and as a derivative action on behalf of the Debtor, filed suit in arbitration and in state court against HART and others for fraud, mismanagement and self-dealing.

8. The Debtor, controlled by Hart did not oppose the Stay Motion and made no effort to cure the Lease default nor to make adequate protection payments to the Landlord.

9. The Shareholders filed their Objection to Landlord 1651 Astor LLC's Motion for Relief From Stay and/or Motion for Extension of Time to Make Adequate Protection Payments Due to the Mismanagement of the Debtor In Possession by Managing Member David Hart. [DE 40].

10. Shareholders requested the Court not allow the Lease to be forfeited and to give them time to oust Hart as manager of the debtor and to cure the Lease defaults.

11. On January 22, 2019 this Court granted the Stay Motion and reserved jurisdiction regarding the matter. This Honorable Court further granted the Shareholders relief from the automatic stay to pursue the arbitration action to oust Hart as manager of the Debtor. [DE 41]

12. The Shareholders resolved the arbitration action against Hart through a settlement and he was replaced as Managing Member.

13. The Shareholders retained counsel, with approval of this court, to represent the Debtor in the State court eviction proceeding. [DE 58]

14. The Shareholders then made an agreement with the Landlord to cure the monetary default in the Lease by making an initial payment of $77,047.10 on April 7, 2019 to the Landlord and agreeing to make additional payments to the court registry in the amount of $413,973.68 on June 7, 2019. (See Exhibit "A" Agreed Order).

15. Additionally, the Shareholders agreed to continue to keep the rent payments current by making additional monthly deposits to the court registry for the monthly rent of approximately $40,000.00. (See copy of the receipt for the most recent deposit for the September rent as Exhibit "B").

16. To date, (including September rent) the Shareholders have paid a total of **$616,527.17** to cure the Lease default inclusive of court registry fees.

17. The Shareholders have also funded substantial amounts to make repairs, connect utilities and otherwise make the hotel property ready to reopen.

18. Prior to the filing of the petition, HART the organizer, promoter and Managing Member of the Debtor (at the time), contrary to the interest of the company and for his personal

benefit, issued to a company he owns and manages, Astor EB-5 Funding LLC., (hereinafter "FUNDING") a mortgage in the amount of $4,500,000. on the previously unencumbered property of the Debtor. This mortgage was entered into without the requisite approvals necessary under the Operating Agreement that provides that he cannot mortgage the property or refinance any indebtedness without approval of the members. More importantly there was no consideration for the mortgage, and it was issued when Hart knew that the company was insolvent.

19. FUNDING filed its Expedited Motion to Compel Debtor to Surrender Leased Premises Pursuant to 11 U.S.C. 365(D)(4) of the Bankruptcy Code, in addition to Expedited Motion for Relief from Stay, (the "SURRENDER MOTION"). [DE 94]

20. FUNDING's motion argues that the Lease was rejected pursuant to bankruptcy code and seeks a forfeiture of the Lease.

21. The Landlord has opposed Funding's motion seeking the forfeiture of the Lease by the Debtor.

22. The Court denied Funding's Surrender Motion without prejudice on May 13, 2019. [DE 99] However the matter has been reset several times and has not yet been adjudicated by this Honorable Court.

23. The cloud of FUNDING's Surrender Motion has impacted the viability of structuring a plan of reorganization.

24. Debtor has filed an adversary complaint seeking to invalidate the mortgage and has also objected to the claim of Funding. However, this matter can be resolved in State court outside of the bankruptcy.

25. FUNDING has not filed any action in or outside of bankruptcy against the Debtor.

26.     The validity of the mortgage of FUNDING is the only remaining dispute in this matter and that dispute is better resolved in state court without the need to burden this Court and the expense to the Debtor to unnecessarily maintain this Chapter 11 case.

27.     If the case is dismissed, the Debtor intends to address and pay its unsecured creditor obligation in the ordinary course of business. The shareholders have already contributed over $670,000. and are committed to provide the funds necessary to reopen the hotel and once again have a viable operation.

28.     There are about twenty (20) unsecured creditors including several small suppliers of the Debtor that are owed for laundry services and bakery products that will be adversely impacted if the Lease is rejected/forfeited or if the case is converted.

29.     It is in the best interest of the creditors and all interested parties to dismiss this case.

30.     The only remaining issue in this Chapter 11 bankruptcy is addressing the validity of the mortgage Hart gave to FUNDING nothing more.

## MEMORANDUM OF LAW

Under section 305(a)(1) of the Bankruptcy Code, the Court may, "after notice and a hearing ... dismiss a case ... if--(1) the interests of creditors and the debtor would be better served by such dismissal." Section 305 is applicable in voluntary cases as well as those commenced under Code section 303. *See, In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464-465 (Bankr. SD NY 2008). Similarly, the Court may dismiss a chapter 11 case pursuant to subsection 1112(b)(1) if to do so inures to "the best interest of creditors and the estate."

Under section 1112(b):

> [O]n a request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal **is** not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss

>a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.
>11 U.S.C. § 1112(b)(1).

Although dismissal may be precluded in "unusual circumstances", as the Shareholders have demonstrated, the circumstances facing the parties and the Court clearly militate in favor of dismissal.

Bankruptcy Courts have flexibility to determine "cause" under § 1112(b), but once cause has been shown, the court must convert or dismiss the case absent "unusual circumstances." *In re Prods. Int'l Co.,* 395 B.R. 101, 107-09 (Bankr. D. Ariz. 2008). Though § 1112(b)(4) includes a list of items constituting cause under § 1112, that list is non-exclusive; courts are free to consider other factors as they arise and may use their equitable powers to reach an appropriate result in individual cases. *Id.; St. Paul Self Storage Ltd. P'ship v. Port Auth. (In re St. Paul Self Storage ltd. P'ship*), 185 B.R. 580; 582 (9th Cir. B.A.P. 1995); *see also* 11 U.S.C. § 102(3) (providing that "[i]n this title 'includes' and 'including' are not limiting."). Indeed, bankruptcy courts have broad discretion to dismiss a chapter 11 case under 11 U.S.C. § 1112(b). *See, e.g., City of Sioux City v. Midland Marina, Inc*. (*In re Midland Marina, Inc*.), 259 B.R. 683, 686 (B.A.P. 8th Cir. 2001); *AMC Mortg. Co., Inc. v. Tenn. Dep't of Revenue* (*In re AMC Mortg. Co., Inc.),* 213 F.3d 917, 920 (6th Cir. 2000). What constitutes cause is a judicial determination based on the consideration of the circumstances of each case. *In re Galvin*, 49 B.R. 665, 668 (Bankr. D.N.D. 1985).

The facts of *Midland Marina, Inc.*, 259 B.R. 683 are very similar to the facts of this case. There, the debtor and the City of Sioux City had entered into a lease to utilize a portion of the waterfront land for a marina. *Id.* at 685. Similar to Funding's claims under the purported Mortgage, the parties disputed their rights and obligations under the lease, and debtor filed bankruptcy. *Id.* The City of Sioux City successfully moved the court to lift the automatic stay to permit it to assume

possession of the lease property. *Id.* Debtor appealed the decision, and around the same time, moved the Court to dismiss its case. *Id.* Some creditors had consented to the dismissal. Although the City of Sioux City objected, it then had to concede that cause existed to dismiss the case. *Id.* The bankruptcy court dismissed debtor's chapter 11. *Id.* at 686. The Bankruptcy Appellate Panel affirmed the dismissal of debtor's chapter 11 case.

The best interests of the creditors will be served by dismissing Debtor's case in the same way the creditors' interests were served by dismissing the case in *Midland Marina, Inc*. Debtor's ability to move toward a resolution with any creditors will require the Debtor to continue with the lease with the Landlord or there will be no asset whatsoever for any of the creditors. Additionally, Debtor's ability to have a viable Plan in this chapter 11 proceeding is contingent upon the claims with Funding, which can be addressed in state court. If the Debtor succeeds on some or all of its claims against Funding, then the majority of the claims against the Debtor will be eliminated or reduced. Likewise, the Debtor cannot reasonably prepare a chapter 11 plan of reorganization until a conclusion is reached regarding the claims with Funding. Debtor will then know whether Funding are creditors, and if so, whether their claim is secured or unsecured, and the extent of the debt owed to them.

The dismissal of Debtor's case would also allow it to fully pursue its claims against Funding in state court, just like the dismissal of the litigation in *Midland Marina, Inc*. allowed the debtor to pursue its state court claims in full. Finally, the dismissal of this case will serve the best interests of Debtor's remaining creditors by allowing them to pursue their claims, if any, without having to wait until the resolution of the claims with Funding.

Where a debtor/creditor dispute can more appropriately be resolved without bankruptcy, the case should be dismissed. Furthermore, voluntary dismissal under the circumstances present

in this case is consistent with Congressional intent to facilitate negotiated reorganization. As the leading commentator on United States bankruptcy law has so astutely stated:

> "In evaluating the purposes of chapter 11 as they relate to section 1112(b), it is also important to bear in mind that Congress designed the reorganization process to provide a forum for the negotiated resolution of the debtor's case in a manner that is as accommodating as possible."
>
> *7 Collier On Bankruptcy, 16th Ed.* ¶ 1112.04[b], citing H.Rep. No. 595, 95th Cong. 1st Sess. 5 (1977).

Consistent with these standards, the Debtor's case should be dismissed under § 1112(b) because it is in the best interest of this estate. The issues that precipitated this bankruptcy, the default on the Lease has been addressed and cured for the most part and can be resolved more quickly and cheaply if the case is dismissed. Finally, dismissal of this case will not impair the rights of any other creditor of this estate as dismissal will simply return such creditors to their relative positions immediately prior to filing of the Debtor's voluntary petition.

## **CONCLUSION**

Based on the aforementioned, the SHAREHOLDERS respectfully request that this Honorable Court dismiss this Chapter 11 case and for any further relief as may be just and proper under the circumstances.

Respectfully submitted,

                                       CORONA LAW FIRM
                                       3899 NW 7th Street, 2nd Floor.
                                       Miami, FL 33126
                                       Main:  (305) 547-1234
                                       Fax: (305) 266-1151

By: */s/ Ricardo R. Corona*
Ricardo Corona
Fla. Bar No. 111333
Ricardo M. Corona
Fla. Bar. No. 716080

*Special Counsel*

## Certificate of Service

I hereby certify that on August 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the Service List below in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Ricardo R. Corona*
Ricardo Corona
Fla. Bar No. 111333

CORONA LAW FIRM
3899 NW 7th Street, 2nd Floor.
Miami, FL 33126
Main:   (305) 547-1234
Fax: (305) 266-1151

## Service List

*Counsel for Creditor, Astor Funding EB-5, LLC*

Peter D. Russin, Esq.
prussin@melandrussin.com
Meaghan E. Murphy, Esq.
mmurphy@melandrussin.com
Meland Russin & Budwick, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131

*Counsel for 1651 Astor, LLC*

Brian G. Rich
brich@bergersingerman.com
Berger Singerman LLP
313 North Montroe Street, Suite 301
Tallahassee, Florida 32301