UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

ASTOR EB-5, LLC,                                      Case No.: 18-24170-AJC
                                                      Chapter 11

        Debtors.
_____/

**ASTOR EB-5 FUNDING, LLC'S RESPONSE IN OPPOSITION TO SHAREHOLDER'S MOTION FOR ENTRY OF AN ORDER DISMISSING CHAPTER 11 CASE [ECF NO. 148] AND REQUEST TO APPOINT A CHAPTER 11 TRUSTEE, OR IN THE ALTERNATIVE, CONVERT CHAPTER 11 CASE TO CHAPTER 7 CASE**

**Astor EB-5 Funding, LLC respectfully requests that its request to appoint a Chapter 11 trustee, or in the alternative, convert this Chapter 11 case to a Chapter 7 case, be heard with the Shareholder's Motion to Dismiss, set for hearing on September 11, 2019 at 3:30 p.m. [ECF No. 150]. The issues presented are the same, this request simply opposes the relief sought by the Shareholders and instead seeks alternative relief authorized by the same sections of the Bankruptcy Code.**

Secured Creditor Astor EB-5 Funding, LLC ("***Funding Company***") respectfully submits its response in opposition to the Shareholders' Motion for Entry of an Order Dismissing Chapter 11 Case [ECF No. 148] (the "***Motion to Dismiss***") and requests that the Court enter an Order pursuant to 11 U.S.C. §§ 1104(a) and 1112(b) appointing a Chapter 11 trustee, or in the alternative, converting this Chapter 11 case to a Chapter 7 case. The Motion to Dismiss fails to demonstrate how dismissal would be in the best interests of the Debtor's creditors, and in fact, it appears that dismissal would only be in the best interests of the Shareholders, who made unauthorized post-petition "loans" to the Debtor and who are motivated primarily to ensure their "loans" are not reclassified as gifts to the Debtor. The stark reality of the situation is that this Debtor has mismanaged the estate, has received unauthorized post-petition financing, has failed

to timely comply with its reporting requirements, has failed to file any plan and disclosure statement, and has demonstrated no reasonable chance of a successful reorganization. The Motion to Dismiss should be denied and a Chapter 11 trustee should be appointed. Alternatively, if the Court is not inclined to appoint a Chapter 11 trustee, this Chapter 11 case should be converted to a Chapter 7 case.

1. On or about January 3, 2013, the Debtor, Astor EB-5 LLC (the "*Debtor*") executed a Loan and Security Agreement, pursuant to which Funding Company agreed to loan the Debtor up to $4 million (the "*First Loan*").

2. On or about June 1, 2016, the Debtor executed another Loan and Security Agreement, pursuant to which Funding Company agreed to loan the Debtor up to an additional $1 million (the "*Second Loan*" and together with the First Loan, the "*Loans*" which are evidenced by the "*Loan Agreements*"). The outstanding principal balance due to Funding Company from the Debtor is currently at least $4,500,000.

3. The Loans are secured by, among other things, that certain Florida Leasehold Mortgage, Assignment of Leases and Rents and Security Agreement (the "*Mortgage*"). The Mortgage includes a security interest in the Ground Lease between the 1651 Astor, LLC (the "*Landlord*") and the Debtor dated July 24, 2008 (the "*Ground Lease*") for the demised premises located at 956 Washington Avenue, Miami Beach, Florida (the "*Demised Premises*"), as well as in the buildings and improvements thereon.

4. On October 1, 2018, the Landlord filed a Complaint for Summary Eviction and Damages against the Debtor in Miami-Dade County Circuit Court, Case No. 2018-033208-CA-01 (the "*Eviction Action*").

5. On November 14, 2018 (the "***Petition Date***"), the Debtor filed this Chapter 11 case [ECF No. 1].

6. After being granted stay relief, the Landlord continued to pursue the Eviction Action. The Eviction Action remains pending. According to the Motion to Dismiss, on behalf of the Debtor, some of the Shareholders have paid at least $616,527.17 into the Miami-Dade Circuit Court Registry in connection with the Eviction Action. Motion at ¶ 16. The Shareholders represent that they have also funded "substantial amounts to make repairs, connect utilities and make the hotel property ready to reopen" and, in total, have contributed at least $670,000 to reopen the hotel and have a viable operation. Motion at ¶¶ 17 and 27.

7. Notably, the Debtor and the Shareholders have repeatedly categorized these funds as loans or advances, and the Shareholders have further alleged that they are creditors of the Debtor by reason of these loans and advances.[1] However, no motion has ever been filed under 11 U.S.C. § 364 to obtain this Court's authorization to obtain credit.

8. This is not the Debtor's only failure to comply with the Bankruptcy Code. As set forth in Funding Company's *Motion to Compel Debtor to Surrender Leased Premises Pursuant to 11 U.S.C. § 365(d)(4) of the Bankruptcy Code and, to the Extent Necessary, Request for Relief from the Automatic Stay* [ECF No. 94] (the "**Motion to Compel**") and two supplemental supporting memoranda [ECF Nos. 116 and 123], and as has been argued before the Court at a hearing on the Motion to Compel and subsequent status conferences, the Debtor failed to comply with § 365(d)(4)(A) by neglecting to assume or reject the Ground Lease within 120 days of the Petition Date. It is Funding Company's position, which is supported by both the clear text of the

---

[1] *See, e.g.*, Motion to Dismiss at note 1; Debtor-in-Possession Operating Reports for April, May, June and July 2019 [ECF Nos. 143, 144, 145 and 146].

Bankruptcy Code and case law, that this failure resulted in automatic deemed rejection of the Ground Lease.

9. When the Debtor finally filed its *Motion Pursuant to Section 365 of the Bankruptcy Code and Rules 6006 and 9017 of the Federal Rules of Bankruptcy Procedure for Authorization to Assume Lease Agreement with 1651 Astor, LLC* [ECF No. 130] (the "**Motion to Assume**"), it utterly failed to comply with § 365(b)(1). The Motion to Assume failed to: (1) clearly set forth whether all defaults had been cured or provide adequate assurance that such defaults would be promptly cured and (2) provide any adequate assurance of future performance. This is a critical issue to the bankruptcy estate because if the Debtor is permitted to assume the Ground Lease, but thereafter defaults, the estate may be saddled with a full administrative rent claim for accelerated rent.

10. A hearing was held on the Motion to Assume on August 21, 2019 [ECF No. 132] (the "***Hearing***"). At the Hearing, after hearing arguments about various parties' concerns about the Motion to Assume, it was pointed out to the Court that the Debtor had not filed any monthly operating reports since February 2019, in violation of Federal Rule of Bankruptcy Procedure 2015, Local Rule 2015-1, and the guidelines and reporting requirements promulgated by the U.S. Trustee. It was further disclosed, by the Debtor's own admission, that the money paid into the state court registry in the Eviction Action was "lent" to the Debtor by the Shareholders, which "loans" were made without this Court's authorization and in violation of § 364.

11. On August 28, 2019, the Debtor finally filed its monthly operating reports for February-July 2019 [ECF Nos. 141-146] (the "***DIP Reports***").[2] However, like the Motion to Assume, the DIP Reports are woefully inadequate and essentially blank. For example, on even a cursory review, it is easy to see that: (1) there are no bank statements and reconciliations; (2) it is

---

[2] Notably, a monthly operating report for January 2019 still appears to be missing.

unclear whether the Debtor has up to date insurance; (3) there are no summaries of disbursements by category; (4) no reflection of U.S. Trustee fees paid; and (5) contrary to other filings in this case, there is no indication whatsoever in those DIP Reports that the Debtor has any liabilities or assets. Instead, for the April-July 2019 DIP Reports, the Debtor has attached a miscellaneous spreadsheet which purports to memorialize "loans" from the Shareholders and a few assorted payments relating to insurance, rent, court fees and legal fees. The only conclusion that can reasonably be drawn from the DIP Reports is that the Debtor has no funds other than monthly unapproved "loans" from its Shareholders. Therefore, it should be obvious that this Debtor is in no position to manage the Demised Premises, whether or not this Chapter 11 proceeding is dismissed.

12. The Debtor's exclusivity period to file a plan expired on June 13, 2019 [ECF No. 70]. While various comments have been made about the Debtor preparing a plan, no plan has been filed, even as the case approaches the one-year mark. The assertion in the Motion to Dismiss that the Motion to Compel is a "cloud" and "has impacted the viability of structuring a plan of reorganization" is not only wrong, it does not make any sense. The Motion to Compel was denied without prejudice in May 2019 [ECF No. 99]. The Motion to Compel has zero impact on the Debtor's ability to develop a plan and solicit acceptances unless and until it is granted.

13. Nothing in the record suggests that there is any hope that this Debtor can navigate and comply with the Bankruptcy Code and reorganize on its own. At every turn, it has missed deadlines and otherwise simply failed to comply with its duties as a debtor-in-possession. It has no money and no ongoing operations. The Debtor has been floundering in Chapter 11 for months with no plan or direction.

14. Now that the Debtor's failures have become obvious to the Debtor and the Shareholders, and upon apparently learning that their unauthorized loans may be considered gifts, the Shareholders filed the Motion to Dismiss. While arguing that dismissal would be in the best interest of creditors, the primary motivation is obvious, and the only parties that benefit from this case exiting bankruptcy are the Shareholders. Instead of dismissal, this case would benefit from the appointment of a Chapter 11 trustee: a neutral fiduciary that can take a fresh look at the Debtor's relationships, assets that can potentially be sold, the viability and chances of success of the pending adversary proceedings, and the options for reorganization for this Debtor, if any actually exist. Alternatively, conversion to Chapter 7 is still a better option for creditors than outright dismissal.

## LEGAL ARGUMENT AND AUTHORITIES

A. **Appointment of a Chapter 11 Trustee**

As stated in the Motion to Dismiss, Section 1112(b)(1) provides the Court with authority to dismiss or convert a Chapter 11 case for cause, whichever is in the best interests of the creditors and the estate. However, § 1112(b)(1) goes on to qualify this, stating "unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." Under § 1104(a), on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(1), (a)(2).

The Bankruptcy Code is designed to allow a debtor-in-possession to retain management and control of the debtor's business operations. *See* 11 U.S.C. §§ 1107, 1108. It is well recognized, however, that a debtor-in-possession owes fiduciary duties to the bankruptcy estate and must, among other things, "protect and . . . conserve property in [its] possession for the benefit of creditors" and "refrain [] from acting in a manner which could damage the estate, or hinder a successful reorganization of the business." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (quoting *In re Sharon Steel Corp.*, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988), *aff'd*, 871 F.2d 1217 (3d Cir. 1989)). "The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D. N.Y. 1989). If a debtor-in-possession defaults in that respect, then the debtor may be dispossessed and alternative management may be appointed in the form of a Chapter 11 trustee. *See Schuster v. Dragone*, 266 B.R. 268, 271 (D. Conn. 2001).

A finding of "cause" under § 1104(a)(1) mandates the appointment of a trustee. *See, e.g.*, *In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136 (10th Cir. 1988); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. at 525. The list of wrongs constituting "cause" warranting the appointment of a trustee is non-exclusive; thus, factors relevant as a court considers the appointment of a trustee under Section 1104(a)(1) may include: conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries; misuse of assets and funds; inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence. *In re Altman*, 230 B.R. 6, 16

(Bankr. D. Conn. 1999), *aff'd in part, vacated in part*, 254 B.R. 509 (D. Conn. 2000). Even so, the "court need not find any of the enumerated wrongs to find cause for appointing a trustee." *Oklahoma Refining*, 838 F.2d at 1136.

In this case, there is cause for the Court to appoint a Chapter 11 trustee under subsection (a)(1) of Section 1104 of the Bankruptcy Code. As noted above, the list of wrongs constituting "cause" is non-exclusive. By its actions and inactions described above, including but not limited to missing its deadline to assume or reject the Ground Lease, obtaining unauthorized post-petition financing, failing to file a plan or even communicate clearly that a plan is being developed and is forthcoming, failing to timely file its monthly operating reports, and thereafter filing grossly insufficient monthly operating reports, the Debtor has exhibited incompetence and mismanagement of its affairs and an inability or unwillingness to comply with the Bankruptcy Code and Rules. There is certainly a strong lack of creditor confidence in the Debtor; for one, Funding Company has absolutely no confidence in this Debtor's current management or the Debtor's ability to ever repay the Mortgage. Turning over control of the Debtor and its assets (as well as any causes of action) over to a Chapter 11 trustee would reassure creditors and other parties-in-interest that the estate is in the hands of an independent fiduciary who is looking out for their interests, and not just the Debtor or the Shareholders.

Alternatively, § 1104(a)(2) of the Bankruptcy Code allows appointment of a trustee even when no "cause" exists. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989). Under Section 1104(a)(2), the Court may appoint a trustee, in its discretion, in the "interests of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2); *see, also, e.g.*, *Sharon Steel*, 871 F.2d at 1226; *Comm. of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 242 (4th Cir. 1987); *see also In re The 1031 Tax Group*, 374

B.R. 78, 90 (Bankr. S.D.N.Y. 2007) (Section 1104(a)(2) standard is "flexible" so as to give court discretion to appoint trustee where such appointment would benefit the parties and estate).

Here, even if the Court finds that there is insufficient cause for the appointment of a trustee under subsection § 1104(a)(1), appointment of a Chapter 11 trustee would be in the best interests of creditors. For all the reasons described above, it is in the interest of creditors at this juncture to put this case into the hands of an independent fiduciary who would be in a better position than this Debtor to (1) assume control of and possibly sell the Debtors' assets free and clear, (2) comply with the Bankruptcy Code and rules, (3) evaluate the viability and chances of success of any pending or potential causes of action, and (4) formulate a viable Chapter 11 plan. As noted by Judge Isicoff in *In re Sundale, Ltd.*, 471 B.R. 300, 307 (Bankr. S.D. Fla. 2012), a potential benefit of a trustee is that a trustee may "have a more objective view to resolution of [ ] conflicts" or "facilitate resolution of [ ] disputes, even if it is only to move the litigation forward without unnecessary distractions and a less jaundiced eye."

Dismissal simply is not the best option for this Debtor's estate, and it is not in the best interests of the creditors. Dismissal will only feed into the delays occasioned by the Debtor, as proceedings in state court will take exponentially longer than adversary proceedings in this Court. While the Trustee may be able to sell the Debtor's assets free and clear of the Mortgage if the Trustee determines that there is no viable reorganization option, the Debtor has no ability to sell its assets outside the bankruptcy given the Mortgage. The only parties that dismissal benefits are the Shareholders, who are likely worried that their $670,000 in contributions to the Debtor were unauthorized and may be deemed gifts if the Debtor stays in bankruptcy.  Outside bankruptcy, the Debtor will certainly acknowledge these "loans" and may favor repayment to the Shareholders over other creditors. The Shareholders have offered no specific explanation as to

how dismissal benefits any parties other than the Shareholders; instead, they make a convoluted argument that the Debtor's claims against Funding Company (which are already pending in an adversary proceeding) can be adjudicated in state court. Further, the Shareholders argue that the Funding Company's mortgage interest must be resolved before other creditors can pursue their own claims and the Debtor can develop a reorganization plan.[3] Frankly, that argument supports remaining in bankruptcy so that the pending adversary cases can be resolved promptly. Funding Company disagrees that other creditors need to wait for the Debtor's claims against Funding Company to be resolved those creditors can pursue their own rights. Other creditors are free to file (and have filed) their own claims against this Debtor. There is simply no legitimate reason that this Debtor can present for its failure to work towards a plan while litigating the pending adversary proceedings (which will surely be resolved much faster in this Court than in state court).

## B. Conversion to Chapter 7

Section 1112(b)(1) provides as follows:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, **whichever is in the best interests of creditors and the estate**, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (emphasis added).

In filing the Motion to Dismiss, the Shareholders (and the Debtor, by virtue of its control by the Shareholders) have already conceded that the requisite cause exists for converting this case to a case under Chapter 7. The question for this Court, if it chooses not to appoint a Chapter

---

[3] The Shareholders' argument ignores the fact that another creditor, STEM LLC, has recently filed its own adversary case against the Debtor.

11 trustee, is whether dismissal or conversion is in the best interests of the creditors and the estate.

For the same reasons set forth above that justify appointment of a Chapter 11 trustee, conversion, not dismissal, is in the best interests of the creditors and the estate. The creditors and estate are best served by the administration of this case by a trustee with fiduciary obligations, whether that be in Chapter 11 or Chapter 7; such an appointment and/or conversion would be better than a dismissal, which would result in delay and nonpayment to creditors other than the Shareholders.

WHEREFORE, Funding Company respectfully requests that the Court enter an Order: (1) denying the Motion to Dismiss; (2) appointing a Chapter 11 trustee or alternatively, converting this case to a case under Chapter 7; and (3) granting Funding Company any and all further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via the Court's Notice of Electronic Filing on September 10, 2019, upon the Registered Users listed on the attached **Exhibit A** and via U.S. Mail upon the parties listed on the Manual Notice List.

s/ Peter D. Russin
Peter D. Russin, Esquire
Fla. Bar No. 765902
prussin@melandrussin.com
Meaghan E. Murphy, Esquire
Fla. Bar No. 102770
mmurphy@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Facsimile: (305) 358-1221
*Attorneys for Astor EB-5 Funding, LLC*

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Johanna Armengol    Johanna.Armengol@usdoj.gov, johanna.armengol@usdoj.gov
- Terrence Ayala    tcayala@gmail.com
- Regina M Campbell    r.campbell@thecampbelllawgroup.com
- Barry O Chase    barry@chaselawyers.com
- Ricardo Corona    bk@coronapa.com, rcorona@coronapa.com
- Meaghan E Murphy    mmurphy@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@melandrussin.com;mmurphy@ecf.courtdrive.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Paul L. Orshan    paul@orshanpa.com, seelenams@gmail.com
- Brian G Rich    brich@bergersingerman.com, efile@bergersingerman.com;jbullock@bergersingerman.com;efile@ecf.inforuptcy.com
- Steven H. Rothstein    steverothstein@miamibeachfl.gov
- Peter D. Russin    prussin@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@yahoo.com;prussin@ecf.courtdrive.com;ltannenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- Steven R Safra    Steven.Safra@csklegal.com, maria.montenegro@csklegal.com
- Adam I Skolnik    askolnik@skolniklawpa.com, bk.skolniklaw@gmail.com;skolnikar45106@notify.bestcase.com

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service).

American Express National Bank
c/o Becket and Lee LLP
PO Box 3002
Malvern, PA 19355-0701

Ricardo Corona
3899 NW 7 St, Second Floor
Miami, FL 33126

Dennis A. Donet
9100 S Dadeland Blvd #906
Miami, FL 33156

Miami-Dade County Tax Collector
c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430
Miami, FL 33128-1733

**EXHIBIT A**